## INDEPENDENT FRIENDS OF AMERICA
## v. WASHINGTON

(January 31, 1927. Opinion and Decree.)
(February 28, 1927. Rehearing Refused.)
(March 28, 1927. Writ of Certiorari and Review denied by Supreme Court.)

---

*(Syllabus by the Court)*

1. **Louisiana Digest—Evidence—Par. 340.**
Where a society charges that defendant, its treasurer, embezzled certain funds, and attaches the home of defendant in suit to recover, suit will be dismissed when the testimony is conflicting and contradictory and the attendant circumstanecs corroborate in part the story of defendant.

Appeal from Civil District Court, Division "C". Hon. E. K. Skinner, Judge.

Action by Independent Friends of America against Mrs. Artimise Washington.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

Claude L. Johnson, of New Orleans, attorney for plaintiff, appellee.

Joseph H. Brewer, of New Orleans, attorney for defendant, appellant.

## OPINION

JONES, J. This is a suit by the plaintiff society for six hundred and eighty-one and 00-100 ($681.00) dollars.

The petition filed March 29, 1923, alleges that plaintiff society directed its banking committee, consisting of three members, to transfer from its account in the Carrollton Branch of the Whitney-Central Trust & Savings Bank the sum of six hundred and 00-100 ($600.00) dollars to a special account in the same bank to be known as Independent Friends of America "Burial Account"; that the defendant treasurer of the society and a member of the said banking committee induced the other members of said committee to sign a voucher in blank for the transfer of said fund, and on March 20, 1923, went to the bank with the signed voucher, filled it out for six hundred and eighty-one and 00-100 (681.00) dollars, withdrew this amount, neglected to transfer it to an account to be known as Friends of America "Burial Account" and embezzled the fund; that she refuses to account therefor; that on account of said embezzlement and failure to account, petitioner fears defendant intends to dispose of her property fraudulently and that a writ of attachment is necessary. The petition was sworn to by Jos. Dudley, president of the society. Bond was given, the writ issued, the bank was made garnishee and the sheriff seized the home of defendant.

Defendant, after admitting that she was treasurer and a member of the banking committee, avers that D. E. Lawrence, president of the society and chairman of the banking committee, came to her home on Sunday, March 18, 1923, and instructed her to take a blank check, which he had already signed, to the other member of the banking committee, Sylvia Gustan, get Sylvia to accompany her to the bank and there withdraw in the neighborhood of seven hundred and 00-100 ($700.00) dollars, and "if Sylvia could not go with your respondent, then, to tell her to sign the check and for respondent to withdraw the funds herself and keep same until Tuesday of next week when he, the Rev. E. D. Lawrence, would go with respondent to open a new account for the 'Burial Account';" that three signatures were necessary to open the new account. Respondent denies that she induced the other members to sign and, on the contrary, avers that Lawrence made excuses because of his work and Sylvia Gustan because of sore eyes, and each of them voluntarily signed the check in blank and delegated petitioner to withdraw the fund; that respondent was held up and robbed by two negro men while on her way home after she had withdrawn the money; that she immediately reported the robbery to a policeman; had shown due care and was not liable for the fund; that officers and members had threatened to have her arrested and to file suit unless she executed a mortgage upon her home to pay the amount; that the attachment was "maliciously obtained upon a false affidavit for the purpose of coercing defendant".

Respondent prays for dismissal of suit with damages of five hundred and 00-100 ($500.00) dollars as attorney's fees for illegal issuance of writ.

The garnishee bank answered all interrogatories "no", and defendant took a rule to dissolve the attachment as illegally issued, which was tried and referred to the merits on April 25, 1923, after taking the testimony of several officers of the plaintiff society, the defendant and defendant's witness, Clara Gray. Then, on June 25, 1923, the criminal charge of embezzlement, which had been filed on March 20, 1923, was tried by a jury and the defendant was acquitted. Finally the case was tried on the merits in court on October 16, 1923; judgment was given in favor of plaintiff and appeal was taken to this court by consent from the judgment referring the rule to dismiss the attachment to the merits and also from the final judgment.

Only questions of fact are involved and the testimony is confusing and in many respects contradictory.

The testimony of plaintiff's officers and of defendant in the main tends to support their pleadings, but that of Rev. Lawrence varies in one important particular. He swears that he had to work on Monday and Tuesday on a boat and that, after signing the voucher, he took it to the defendant on Sunday morning, March 18, and instructed her to get the other member of the banking committee, Sylvia Gustan, to go with her to the bank and transfer six hundred and 00-100 dollars to a new account, but the petition alleges, as shown above, that the defendant had induced the other members of the committee to sign the voucher in blank. Thus his testimony contradicts the petition in one important point.

Defendant swears that he came to her house on Sunday, March 18, signed the voucher while there, and instructed her to get Sylvia Gustan, the other member of the committee, to go with her to the

bank and withdraw "upwards of seven hundred dollars", bring it to her home, and keep it until he, the president, finished his work on the boat and could go to open the new account.

As the decision in this case depends largely upon the credibility of' the testimony of these two witnesses as to Lawrence's instructions, we must examine their testimony as a whole, that of the other witnesses, and the attendant circumstances.

Lawrence is corroborated in part by Sylvia Gustan, the third member of the banking committee, who testified on the trial of the merits (p. 16) that she did not know of any instructions to transfer the money, but understood that the money was to be divided and that she was at the meeting when they decided to divide the money.

On page 17 she testified as follows:

"Q. Was Mrs. Washington present when they decided to divide the money into two funds?
"A. She told me she was, but I was not present at that time. She told me that she was instructed to get my signature and divide the money, transfer the money."

She further testified that she had very sore, red, painful eyes on Tuesday morning, March 19; that defendant, who found her in bed when she called at her home, between seven and eight, first stated that she had the check with Lawrence's signature on it and wished Syliva to accompany her to the bank to transfer six hundred and 00-100 ($600.00) dollars, but later defendant said that she would not advise "me to go out on account of my eyes", as she understood the transaction and could transfer the fund without me if I would sign the check.

I said: "That is true", and signed the voucher.

In the criminal court she testified that she had served on the banking committee with defendant for a year, and that she had often signed vouchers just like this one before, and that one of the committee would then take them to the bank to be filled in.

Lawrence, Jos. Dudley and Lucy Moore, plaintiff's other witnesses, all testify that the resolutions of the special committee, of which the defendant was a member, showed that the money was to be transferred to another account in the same bank, but was not to be withdrawn.

The resolution, which is in the record, is, like much of the testimony, by no means clear. It reads as follows:

"January 11, 1923.
"Extract from Minutes of Meeting of Lawrence Lodge No. 1, Independent Friends of America, of City of New Orleans, State of Louisiana:

"The Lawrence Lodge held its regular meeting January 11, 1923. Meeting was called to order by G. M. E. Lawrence. Devotional exercise conducted by the prelate. Scripture reading: Psalm 9. Singing: Hymn, 'My God, the Spring of All My Joys.' Prayer by prelate.

\* \* \* \*

"Report of committee on separation of funds, subordinate lodge from burial funds, as follows:
"New Orleans, La., January 9, 1923.
"To Lawrence Lodge Officers and Members:
"The committee appointed by the Lawrence Lodge No. 1, I. F. of America, met. January 9, 1923, to make provisions for the separation of the burial funds from the funds of the subordinate lodge.
"The W. M. opened with singing and prayer.
. "After which he stated the purpose of' the meeting called is to place in the name of the burial fund an amount, and we must separate from the money of the subordinate lodge. After the members had discussed the matter, Brother J. Dudley sug-

gested that the committee act immediately and decide on what the amount shall be. The W. M. suggested that the amount be $600 (six hundred).

"The committee readily agreed. We, the committee, thereby report $954.25 in the bank not to be drawn.

"But the amount of $600, deducted from the same to be used only as burial fund money, leaving a cash balance of $354.15 to Lawrence Lodge No. 1. Hoping this will meet your approval, as the committee will only separate this money on the approval of the lodge.

"Charlotte Clivens, Artimise Washington, B. Jackson, M. Gariboldi, J. Dudley, Hannah Williams, M. Lawrence, Lucy C. Moore, B. P. Dennie, J. Douglas, E. Bush, S. Gusta, E. Lawrence, G. M.

"Report received on motion by Bro. Harris and seconded by Bro. Gordon. Recd. by Bro. E. Bush, acting G. M., that the report be received and committee discharged for their good work.

"A true copy from the original records.

(Signed) "MARX RUFFIER,
"Recording Secretary."

Surely, as testified by Sylvia Gustan and by defendant, this merely authorizes the separation of six hundred and 00-100 ($600.00) dollars for the burial fund, but it does not show in what name the separated fund was to be deposited, nor by whom, how or when.

The petition alleges that a new account was to be opened in the name of the Independent Friends of America, "Burial Fund", and Lawrence (on page 9) under cross-examination testified as follows:

"Q. Did you not tell her to withdraw upwards of seven hundred dollars?
"A. No, sir.
"Q. You are sure of that?
"A. Yes, sir.
"Q. What did you tell her about the opening of the new account?
"A. I told her to go to Augustin (Guistan) to sign and go with her and transfer the six hundred dollars from the Lawrence Lodge No. 1 to the Supreme Board of the Independent Friends of America, and the bank would instruct her how to make the deposit.

"Q. You did not tell her you would go the following Tuesday and sign the new card and open the new account?
"A. No, sir; it was not necessary; there was another committee appointed for that."

The opening of the new account in a bank for a different committee is considerably more complicated than the mere transferring of a fund from Account A to Account B. Banks are always careful to get the signatures of all those whose names must appear on checks withdrawing the fund.

Plaintiff's able attorney also contends that the minutes of the meeting of the society on March 22, 1923, show defendant's responsibility for the loss, but in this we cannot agree with him. Necessarily at this meeting, which was called to investigate the loss of the money, the members were all indignant with the whole banking committee, for the society had suffered seriously and the members were anxious, above all, to locate the guilty party and get the money back.

It is true that these minutes, which are in the record, show that the defendant said she had made a mistake in removing the money from the bank, but minutes also quote Sylvia Gustan as contradicting her testimony on the stand when she says: "There was no voucher and the monies of this lodge has always under Brother Lawrence been paid out without voucher and drawn from the bank in this same way." This statement tends to show that the entire banking committee was under fire, which conclusion is confirmed by the final action of the society in removing all three and then electing new officers.

The defendant testified that she always did what Lawrence instructed about draw-

ing money; that she had often before drawn money and carried it to her home pending payment, and she specifies that she drew and took to her home one hundred and 00-100 ($100.00) dollars on January 17, to pay for Lawrence's carrying a concealed weapon (see p. 5 of defendant's testimony in criminal court), and at another time she had drawn and taken to her home seventy-five and 00-100 ($75.00) dollars. (In this she is confirmed by Sylvia Gustan). That she had drawn six hundred and eighty-one and 00-100 ($681.00) dollars, because Lawrence had told her on Sunday, March 18, that the board had changed the amount for the burial fund from six hundred and 00-100 ($600.00) dollars to six hundred and fifty and 00-100 ($650.00) dollars, and that thirty-one and 00-100 ($31.00) dollars was necessary to pay the members of the board; that she had seen a reddish-looking big negro in the bank while she was being helped by a man and a lady in the bank to fill out the check, and that she had been held up by this reddish-looking negro and another black negro, who were in a Ford car, on Short street, while walking to her home on Lowerline street from the bank; that she had cried out when they first attacked her, but the robbers had knocked her down, grabbed her bag, jumped in the Ford car and gone up Plum street from Short to Carrollton avenue, out Carrollton to Jeannette, and down Jeannette toward Broadway; that she had followed them until she met Clara Grey on Jeannette and Carrollton avenue, when she was told that the Ford car, which had gone rapidly down Jeannette, was some distance away.

She further testified that she had reported the robbery to a policeman at Carrollton avenue and Plum street, and had made a report to police headquarters on Tulane avenue, but had gotten no results.

Clara Gray corroborates defendant by testifying that she saw the Ford car with two negro men going rapidly down Jeannette just before she met defendant out of breath from running and much dishevelled on Jeannette, near Carrollton, about the time at which defendant had fixed the robbery.

The body of the check shows clearly two distinct handwritings.

Defendant's position is further strengthened by proof that she has owned and lived in a little three-room cottage on Lowerline for many years in a white neighborhood and that she has never been in any trouble before.

Mrs. Mosely, wife of Prof. Mosely of Tulane, swears that she often employed defendant to take care of her children when she was out.

Unquestionably it was most unbusinesslike to take the money home, if it was to be put in the same bank in another deposit, but it was unbusinesslike on the part of the president to sign the check in blank and leave it with defendant, simply because he had to work two days, when there is no proof of any necessity for haste, and when he admits that another committee had to make the new deposit. Honors are about equal, therefore, on the folly of the two steps, and we must realize that we cannot expect direct businesslike conduct from ignorant, inexperienced negroes.

Plaintiff contends that there are many discrepancies in defendant's three versions of the complicated transaction, but we think that she has told the story very consistently, considering her lack of education,

her inexperience in business and her station in life. Certainly there are no greater variations in her accounts than in the testimony of some of the witnesses for plaintiff.

It would be a great hardship to deprive this woman of her home, and we do not think from the above reasons that plaintiff has made the case sufficiently certain to justify any such vigorous measure.

The judgment is, therefore, reversed and suit is dismissed, both parties to pay their own costs.

———

I respectfully dissent.
(Signed) CHAS. F. CLAIBORNE,
Judge.